UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
WALTER O. BOOMER,

        Plaintiff,

v.                           1:05-CV- 283 (NPM)

MICHAEL J. ASTRUE,[1]
Commissioner of Social
Security Administration,

        Defendant.
-----------------------------------------------------------------------------------------------------

APPEARANCES                     OF COUNSEL

ERWIN, McCANE & DALY        THOMAS C. ERWIN, ESQ.
Attorney for the Plaintiff
23 Elk Street
Albany, NY 12207

OFFICE of the UNITED STATES ATTORNEY   WILLIAM H. PEASE, ESQ.
Attorney for the Defendant
100 South Clinton Street
Syracuse, NY 13261-7198

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

      Plaintiff Walter O. Boomer (the "plaintiff") brings this action pursuant to

§ 205(g) of the Social Security Act (the "Act"), codified at 42 U.S.C. §§ 405(g),

---

[1]     On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and is substituted for Commissioner Jo Anne B. Barnhart as defendant in this action. Fed.R.Civ.P. 25(d)(1).

seeking review of the final decision of the defendant Commissioner

("Commissioner") of the Social Security Administration ("SSA") denying

plaintiff's claim for disability insurance benefits under the Act.  For the reasons

stated below, the Commissioner's decision will be affirmed.

## I.      PROCEDURAL HISTORY and FACTS

The following facts and procedural history are set forth in the plaintiff's

brief (Doc. No. 5), and the court accepts them as true for the purpose of this

appeal.  Where these facts differ from the record, where facts are omitted, or in the

interest of clarifying plaintiff's facts, the facts will be supplemented as needed by

undisputed facts from the record.

Plaintiff developed pain in his right buttock, neck, back and right shoulder

after a work related accident on June 22, 1999.  Pursuant to the accident,

plaintiff's treating orthopedist, Dr. Wirth, diagnosed a strain of the right rotator

cuff, cervical facet dysfunction, and a strain of the lumbar spine.  Wirth prescribed

anti-inflammatories, muscle relaxants and physical therapy, as well as Motrin for

pain relief, and kept plaintiff out of work.[2]  Plaintiff discontinued the July 1999

physical therapy prescribed by Wirth as he found it had not helped him. Doc. No.

---

[2]       At that time of the accident, plaintiff had been employed as a corrections officer
for nineteen years.

5 at 3.  Plaintiff indicated that he continued with the physical therapy as long as he could, but it only aggravated his pain. R:145.  The record reveals that he completed three physical therapy sessions between July 1 and August 16, 1999, when he was discharged from physical therapy on August 3, 1999 for non-compliance. R: 270-71.[3]  Dr. Wirth referred plaintiff to physiatrist Dr. Ahmad A. Sultan, M.D. ("Sultan").

On August 3, 1999, Dr. Edwin Moehler ("Moehler"), the evaluating physician for the employer's  Workers' Compensation carrier, diagnosed plaintiff as having a mild-to-moderate temporary disability, and advised plaintiff that he was capable of work which permitted him to alter his position between sitting, standing and walking as needed, limited carrying with his upper extremities, and plaintiff was not to be exposed to potential physical altercations. Doc. No 5 at 4. Moehler released plaintiff back to light duty work in August of 1999, with a notation that if plaintiff had not returned to full duty by October 1, 1999, he should be reevaluated. R:341.  Plaintiff's work attempt proved unsuccessful, and plaintiff left his light duty assignment after just five days. R:420.  On September 2, 1999, plaintiff saw orthopedist James E. Striker, M.D. ("Striker")for a second opinion.  Striker stated that plaintiff's plain x-rays and his MRI scans of the

---

[3]        Administrative record.  Hereinafter, "R: __."

sacrum and SI joints were essentially normal, there was no disc herniation, and that there was a very mild bulge in the cervical spine at C-6, but with no nerve entrapment.  Striker opined that plaintiff was suffering from a contusion, noting that it would take plaintiff many months to fully recover, and suggested that plaintiff have a steroid injection.  Id.; R:270-71.

On September 3, 1999, Sultan wrote Wirth that he had directed plaintiff to undergo physical therapy two to three times a week for four weeks.  Plaintiff had been taking over the counter aspirin and Motrin; Sultan started plaintiff on Celebrex and Ultram.  On October 29, 1999, Sultan reported that plaintiff had completed a course of physical therapy with limited improvement.  Sultan also upgraded his medications to include Zanaflex. R:196.  On March 20, 2000, Sultan reported that plaintiff's pain was reported as 7 on a scale of 1-10.  Sultan opined that plaintiff's had failed to respond to conventional treatment, and Sultan deemed plaintiff's condition to be permanent and partial. R:194.  On May 22, 2000, Sultan noted plaintiff's continuing lower back pain radiating down to his right lower extremity, with no new injury and no participation in physical therapy.  Plaintiff reported his pain as an 8 on the 1-10 scale of pain.  Sultan reported that he substituted Vioxx for the Daypro plaintiff was then taking. R:193.

On June 6, 2000, plaintiff was examined by the SSA's orthopedic

consultant, Dr. Amelita Balagtas ("Balagtas"). Balagtas found that plaintiff had pain in the lower back, neck, right shoulder, but ruled out musculoskeletal origin and bursitis. Balagtas opined that plaintiff would have some limitations in activities that required bending, lifting, prolonged sitting and standing, overhead hand activities and activities requiring lifting, carrying, and reaching involving the right upper extremity. Doc. No.5 at 6. Plaintiff continued treatment with Sultan for ongoing pain. Sultan's office notes reiterated no change in plaintiff's condition, but that he was continuing with prescription medications for his pain.

An MRI of plaintiff's right shoulder performed on September 27, 2001, some fifteen months after the accident, showed hypertrophy of the AC joint and the suggestion of inflammation and possible impingement. R:235. An MRI of plaintiff's cervical spine performed on December 1, 2001 showed a herniated disc with mild mass effect upon the cervical cord and abutting the C6 nerve root, as well as a disc bulge at C6-7. R:221.

On November 19, 2002, plaintiff was seen by neurologist Dominic Sette-Ducati, M.D. ("Sette-Ducati"), who documented plaintiff's chronic right shoulder, knee, neck and low back pain, and found that plaintiff could lift and carry only up to twenty pound occasionally and less than ten pounds frequently, could stand and/or walk less than two hours a day, could sit for about six hours a day, could

5

never climb, kneel or crawl, and was limited with regard to overhead reaching.

Doc. No. 5 at 9.  Sette-Ducati found that plaintiff walked with a lumbering gait,

caused in part by overweight, and that his inability to bend down to more than 65

degrees was caused in part by his weight and pendulous abdomen.  Sette-Ducati

opined that  "[t]his patient's diagnosis is not clear.  It could be anything from

hypothyroidism to fibromyalgia.  He warrants further clinical evaluation." R:359.

Plaintiff continued treating with Sultan through 2002, complaining of

chronic pain, and continued taking multiple prescribed medications, including the

opioid Lortab (R:357) and chronic intake of Vioxx. R:380.  Despite an early

intolerance of Lortab by plaintiff (R:356), by March 29, 2004, plaintiff was still

taking Lortab, and being counseled against its intake on a regular basis as it could

cause dependency. R:402.  In June of 2004, plaintiff was reporting the intensity of

pain as 9 on the 0-10 scale of pain, and reporting that Lortab, Bextra, and Flexeril

only gave him limited relief. R:404.

Plaintiff filed an application for a period of disability and disability

insurance benefits on March 20, 2000, alleging multiple severe impairments

resulting from the accident.  After his claim was denied at the initial and

reconsideration levels, a hearing was held in front of an administrative law judge

("ALJ") on February 14, 2001.  On April 27, 2001, the ALJ issued an unfavorable

hearing decision, finding that the plaintiff was not disabled within the meaning of the Act.  Claimant successfully appealed the ALJ's decision, and this case was remanded to the ALJ for further proceedings.  On June 6, 2001, while the administrative appeal from the first claim was pending, plaintiff filed a second application for disability insurance benefits.  The second application was also denied at the initial level, and the two claims were consolidated.

A second hearing was held on February 23, 2003, and on June 14, 2003, the ALJ issued an unfavorable decision.  Claimant filed a request for review of the ALJ's hearing decision and once again briefed his arguments to the Social Security Appeals Council ("Appeals Council").  On February 9, 2005, the Appeals Council denied review, and the June 14, 2003 unfavorable hearing decision became the Commissioner's final decision on the plaintiff's application of benefits.  Plaintiff filed his appeal of the Commissioner's decision in this court on March 3, 2005.

In his appeal, the plaintiff raises three issues with the court.  The plaintiff contends that (1) the Commissioner did not properly evaluate the plaintiff's credibility with regard to his allegations of disabling pain; (2) the Commissioner's residual functional capacity assessment is not supported by substantial evidence in the record; and (3) the Commissioner's conclusion that the plaintiff was not

disabled at step five in the sequential analysis is not supported by substantial evidence in the record.

## II.   DISCUSSION

### A.   Standard of review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004);  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "The Act must be

liberally applied, for it is a remedial statute intended to include [,] not exclude."

Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).

An individual is considered disabled for purposes of his or her eligibility for

Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security

Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential

9

evaluation process, by which the Commissioner is to determine whether an

applicant for Social Security Disability is disabled pursuant to the aforementioned

statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of

Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity[4] to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his] burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d

41, 46 (2d Cir. 1996)).

---

[4]      Residual functional capacity ("RFC") refers to what a claimant can still do in a work setting despite any physical and/or mental limitations caused by his or her impairments and any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615 (S.D.N.Y. 2007) (internal quotations omitted).

As a threshold issue, the court emphasizes that 42 U.S.C. § 423(d)(1)(A) specifically states that a person is deemed disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is defined as "work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a) and (b).

**B.    Analysis**

The plaintiff first asserts that the ALJ did not properly evaluate the

11

plaintiff's credibility with regard to his allegations of disabling pain.  An ALJ is

required to evaluate a claimant's credibility concerning pain according to the

factors set forth in 20 C.F.R. § 404.1529, which states in pertinent part that:

> [i]n determining whether you are disabled, we consider
> all your symptoms, including pain, and the extent to
> which your symptoms can reasonably be accepted as
> consistent with the objective medical evidence and other
> evidence ... These include statements or reports from
> you, your treating or examining physician or
> psychologist, and others about your medical history,
> diagnosis, prescribed treatment, daily activities, efforts to
> work, and any other evidence showing how your
> impairment(s) and any related symptoms affect your
> ability to work. We will consider all of your statements
> about your symptoms, such as pain, and any description
> you, your physician, your psychologist, or other persons
> may provide about how the symptoms affect your
> activities of daily living and your ability to work.

20 C.F.R. § 404.1529 (West 2007).

Social Security Ruling ("SSR") 96-7p governs how ALJs may evaluate the

credibility of an individual's statements.  Stated here in pertinent part:

> The purpose of this Ruling is to clarify when the
> evaluation of symptoms, including pain, under 20 CFR
> 404.1529 and 416.929 requires a finding about the
> credibility of an individual's statements about pain or
> other symptom(s) and its functional effects; to explain
> the factors to be considered in assessing the credibility of
> the individual's statements about symptoms; and to state
> the importance of explaining the reasons for the finding
> about the credibility of the individual's statements in the

disability determination or decision. In particular, this Ruling emphasizes that:

1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the

individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight....

SSR 96-7p (West 2008).

In the case at bar, the ALJ found that plaintiff's "subjective complaints are overstated and are not credible." R:24. In his brief, plaintiff states that "[t]here is no reasonable basis in fact or law to find that the claimant's testimony in this matter merits anything less than full credibility and a remand is required for proper administrative consideration of the claimant's credibility regarding his statements caused by his multiple severe impairments prevent him from performing any

14

substantial gainful activity." Doc. No. 5 at 11.  Plaintiff argues that "a claimant

with a long work history is entitled to substantial credibility when claiming he can

no longer return to work due to the pain and/or limitations caused by his severe

impairments. Doc. No. 5 at 12, citing Schaal v. Apfel, 134 F.3d 496 (2d Cir.

1998).  As a threshold matter, it is undisputed, and clearly set forth in the ALJ's

decision that plaintiff can no longer perform his past relevant work as a

corrections officer. R: 24.   Regarding plaintiff's subjective complaints of

disability due to severe pain, the court is tasked only with determining whether the

ALJ applied the correct legal standards, and whether substantial evidence supports

the ALJ's decision.  A careful review of the record reveals that the common

consensus among treating and examining medical personnel alike was that of a

temporary and partial disability, or a permanent partial disability, but a partial

disability nonetheless.  The record also reveals that the consensus was that the

severity of the symptoms and limitations were out of proportion to objective

findings.  See e.g., R: 303 (RFC assessment, Judith Bodmar, MD).  Treating

physician Carl Wirth, M.D. states that plaintiff assessed his lower back pain at

seven to eight on a scale of zero to ten, and his neck/shoulder pain at five to seven

on the same scale.  Despite being told by Dr. Wirth that his pain reports were in

the "narcotic range of pain control requirements," plaintiff "stuck with his story."

"Objectively," writes Dr. Wirth, "there appear to be no deficits at the time. Subjectively, the patient claims a fairly high estimate of subjective discomfort...." R: 320.   Physiatrist Sultan writes that plaintiff reported pain of 9 on a scale of 0-10, with no new injury, but plaintiff was reluctant to pursue physical therapy as he had tried it in the past to no avail.[5]  On January 26, 2004, Sultan was still reporting plaintiff's disability status as temporary to partial, mild to moderate, and as stated above, Sultan discussed with plaintiff the need to limit the intake of a particular prescription painkiller, Lortab, for severe pain only.[6]  R:399.

Dr. Moehler stated that plaintiff "has multiple self-imposed limitations based on his intolerance to subjective symptoms of pain being produced." R: 275. Moehler also states that, inter alia, plaintiff's "prognosis is unfavorably impacted by continuing to be overweight ... he has refused manipulative therapy in the past as well as injections to identify pain generators ... patient's subjective symptoms [are in] excess of objective findings ...." R: 212.  Neurologist Sette-Ducati found limitations in plaintiff's movement "only because of his size, weight, poor tone

_____

[5]     Plaintiff lists 12 outpatient visits to St. Peter's Hospital for physical therapy. R:129.

[6]     The court notes that plaintiff progressed from over the counter painkillers immediately after the accident in June of 1999, to prescription painkillers, including Bextra, Flexeril and the opioid Lortab by January 26, 2004, with no consistent objective diagnosis as to any condition causing the allegedly severe pain.

and condition.  Until diagnosis is substantiated and appropriate methods are taken in the form of exercise and weight loss, he carries the above limitations." R: 363.

The court also notes that on September 15, 2003 when plaintiff was seen by Sultan for a followup evaluation, plaintiff reported that he had suffered injuries to his foot in a motorcycle accident which had necessitated admission to the hospital. R:396.

The court has considered the entire case record, including the objective medical evidence, the plaintiff's statements to various treating and examining physicians about symptoms and pain, statements and other information provided by treating or examining physicians or psychologists, and other relevant evidence in the case record.  The court finds that the ALJ's analysis of the plaintiff's credibility meets the requirements of Ruling 96-7p, and that substantial evidence in the record supported the ALJ's conclusion that the plaintiff's subjective complaints are overstated and are not credible.   The ALJ was in the unique position to observe the plaintiff and his demeanor during his testimony at the hearing, and the degree of weight to be afforded a claimant's subjective complaints of pain is within the ALJ's discretion.[7]   Accordingly, the court finds

---

[7]        See Wright v. Barnhart, 2006 WL 4049579 (D.Conn. 2006) (citing Tejada v. Apfel, 167 F.3d 770, 775-76 (2d Cir. 1999).

17

no error on the issue of credibility.

Plaintiff also asserts that the Commissioner's residual functional capacity ("RFC")  assessment is not supported by substantial evidence in the record.  RFC is defined in the regulations as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continued basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule."  As stated above, RFC is the most an individual can do despite his or her limitations or restrictions.  Social Security Ruling 96-8p (West 2008)

> The RFC assessment must be based on *all* of the relevant evidence in the case record, such as:
>
> [m]edical history, [m]edical signs and laboratory findings, [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), [r]eports of daily activities, [l]ay evidence, [r]ecorded observations, [m]edical source statements, [e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, [e]vidence from attempts to work, [n]eed for a structured living environment, and [w]ork evaluations, if available.

Id. (emphasis in original).

Plaintiff asserts that the ALJ "ignored relevant, credible, and uncontradicted medical evidence in the record and improperly substituted his own lay judgment to

find the plaintiff retained the RFC to perform work requiring prolonged periods of sitting, standing or walking." Doc. No. 5 at 14.  The court disagrees.  The ALJ considered all of the relevant evidence in the case record, including a thorough recitation of plaintiff's medical history (R: 18-21) as well as the recitation of plaintiff's daily activities.  In addition, the ALJ relied on the expertise of a vocational expert who testified at plaintiff's hearing. R:22-24; R:455-86.  The court finds that the ALJ applied the correct legal standards and found substantial evidence to support his decision.

The third and final issue raised by the plaintiff is that the Commissioner's conclusion that the plaintiff was not disabled at step five in the sequential analysis is not supported by substantial evidence in the record.  Plaintiff states that "given the ALJ's incomplete RFC assessment and improper credibility determination in this case, the hypothetical questions posed to the [vocational expert] at the February 20, 2003 [hearing] are invalid and cannot be a basis to support the Commissioner's burden of proof at Step Five in the sequential analysis." Doc. No. 5 at 14.  After a careful review of the entire record, the court concurs with the ALJ's conclusion, giving considerable weight to the plaintiff's own words and actions, and considerable weight to the opinions of the treating and evaluating physicians, set forth in detail above.  The court finds that the ALJ applied the

correct legal standards and correctly weighed the substantive evidence in finding that the plaintiff was not totally disabled for the period of time at issue here. Accordingly, the Commissioner met his burden at step five in the sequential analysis.

## III.  CONCLUSION

For the reasons set forth in the body of this opinion, the ALJ's decision denying plaintiffs disability benefits under the Act is hereby AFFIRMED.

SO ORDERED.

June 12, 2008

_____
Neal P. McCurn
Senior  U.S. District Judge